ROY L. WILCOX and ROY L. WILCOX as the next
friend of JOHN WILCOX and GARY WILCOX,
*Plaintiffs and Respondents,*

vs.

FRANK J. HERBST,

*Defendant and Appellant.*

(No. 2717; April 10th, 1956; 295 Pac. (2d) 755)

290

For the defendant and appellant, the cause was submitted upon the brief of Smith and Nicholas of Lander, Wyoming, and oral argument by William J. Nicholas.

No appearance for plaintiffs and respondents.

OPINION

PARKER, Justice.

John Wilcox, sixteen, accompanied by his fourteen-year-old brother, was driving the car of his father, Roy L. Wilcox, on a Fremont County road after dark on the night of July 6, 1953, when the car struck the horse of defendant Frank J. Herbst, damaging the automobile, injuring the driver, his brother the passenger, and the horse. The father sued Herbst (a) for damage to the car and (b) as next friend for the damages caused by the injuries to each of the sons. Herbst cross-petitioned for the injury to the animal. The trial court found that the negligence of John Wilcox and Frank J. Herbst proximately caused the accident, but as a matter of law that the negligence of the son-driver could not be imputed to the father, and therefore entered judgment for the father, Roy L. Wilcox, against defendant Frank J. Herbst for the sum of $845.00 and costs. (No judgment was entered on the claim of John Wilcox or Gary Wilcox, plaintiffs, or the counterclaim of Frank J. Herbst, defendant; but in view of the findings of negligence, it was apparently intended that the judgment be considered to be against the claims of each of these parties.)

From this judgment, defendant has appealed, raising three contentions:

(1) That the negligence on the part of the eldest son, driver of the motor vehicle, should bar the damages occasioned to the owner, the driver's father.

(2) That the proof of the damages was insufficient to sustain the judgment.

(3) That a person leading horses on a highway has no duty to display a warning light and failure to do so is not negligence.

We shall discuss the points raised by defendant in the order listed.

Defendant seriously urges that the negligence of a son-driver is imputable to a father-owner. His arguments are ingenious and would be convincing, did he but cite authority for his views. He points out that if the judgment is allowed to stand the results will be "a distortion of principles and an absurd ramification of good law." He says that:

" * * * If a family owns two cars, one of which is usually driven by the wife, and one of which is usually driven by the husband, it would be wise for the car usually driven by the husband to be owned by the wife, and the car usually driven by the wife to be owned by the husband. In such event, notwithstanding that one spouse might be negligent in causing an accident and damage to other persons, so long as there was any evidence of negligence on the behalf of the third persons, the other spouse owning the car would recover therefor, and the total loss of money to the family would be minimized."

He applies this same principle to business and to various other situations.

Perhaps there are answers to this point of view which might have been highlighted had plaintiff chosen to appear with counsel and present either brief or oral argument in this court. It is unnecessary to speculate on that subject since defendant cites no law

as basis for his position. Instead, we shall discuss generally the state and current trend of the law relating to a bailee's contributory negligence as a defense to a bailor's action. We shall also consider two ramifications of this subject, the imputation of the negligence of a spouse-driver to a spouse-owner, and the imputation of the negligence of a minor-driver to a parent-owner. It will be noted that there are numerous cases and considerable discussion on the general subject but little precedent dealing with facts identical to the situation at hand.

The basic rule on the subject is given in 6 Am. Jur., Bailments § 310, which states the former rule that:

"  *  *  *  the bailee's negligence may be imputed to the bailor so as to defeat his recovery, where it contributed to the injury or loss of the bailed property for which the action is brought."

but goes on to say:

"There has been a change in the weight of authority on this question. Formerly it was, numerically at least, in favor of the view that if the bailee or his servant, through negligence, contributed to the injury of goods in his hands, such negligence was imputable to the bailor, so as to prevent a recovery by him from a third person whose negligence, combined with that of the bailee, caused the injury; and this view is still adhered to in some jurisdictions. [Rose v. Baker, 138 Tex. 554, 160 S. W. 2d 515; Langford Motor Co. v. McClung Constr. Co., Tex. Civ. App., 46 S. W. 2d 388.]  *  *  *

"The more recent cases, however, have manifested such a trend in the contrary direction that now the decided weight of authority favors the opposite rule, namely, that the bailee's contributory negligence is not imputable to the bailor in the latter's action against a third person for injury to, or destruction of, the subject of the bailment. The cases supporting this view proceed on the ground that when one has been injured by the wrongful act of another to which he has in no way contributed, he should be entitled to compensation from the wrongdoer unless the negligence of someone toward whom he stands in the relation of principal or

master has materially contributed to the injury, and that it is well settled that the bailor bears no such relation to the bailee."

To the same effect is another subject in this encyclopedia, 5 Am. Jur., Automobiles § 493:

"In accord with the modern rule that a bailee's contributory negligence is not imputable to the bailor in the latter's action for an injury to, or destruction of, the subject of bailment, the contributory negligence of one to whom an automobile is loaned by its owner and who is using it for his own pleasure or benefit is not imputable to the owner so as to prevent the latter's holding another liable for negligently injuring the car, unless the owner retains some direction or control over the action of the bailee. * * *"

citing Annot., 6 A.L.R. 316 with a supplement in Annot., 30 A.L.R. 1248, both of which clearly set forth the change in the weight of authority on this question.

Cases on the general subject are found digested in Volume 34 of the Fifth Decennial Digest (1936 to 1946), Negligence, Key Number 90, among which are the following: Gagle v. Heath, 114 Ind. App. 566, 53 N.E. 2d 547 (holding daughter-driver's negligence not imputable to father-owner); Weitkam v. Johnston, La. App., 5 So. 2d 582, La. App., 6 S. 2d 54 (holding no recovery by father when daughter was driving car, *because of agency*); Tibbetts v. Harbach, 135 Me. 397, 198 A. 610 (holding wife's negligence not imputable to husband to prevent recovery for damage to car); Levellee v. Wright, 300 Mass. 382, 15 N.E. 2d 247 (holding negligence of driver of loaned automobile not imputable to owner to prevent recovery for damage to car); Darian v. McGrath, 215 Minn. 389, 10 N.W. 2d 403 (holding fact that plaintiff and driver were husband and wife did not of itself create relationship of master and servant or principal and agent); Christensen v. Hennepin Transp. Co., 215 Minn. 394, 10 N.W. 2d 406, 147 A.L.R. 945 (holding negligence of bailee not imputable to bailor; Lubell v. Annunziata, Sup.

App. T. 9 N.Y.S. 2d 100 (holding owner of automobile used with his consent in his absence and not in his business may recover for negligence of third person damaging automobile despite borrower's negligence) ; Strouse v. Baltimore & O. R. Co., 76 Ohio App. 327, 64 N. E. 2d 257 (holding negligence of husband-bailee is not imputable to wife-bailor) ; Cranston v. Railway Express Agency, 237 Wis. 479, 297 N. W. 418 (holding, in action for damage to plaintiff's automobile resulting from collision, there is no question of contributory negligence where plaintiff's automobile was driven by plaintiff's wife, bailee).

Probably the strongest general statement on the subject is found in 4 Blashfield, Cyclopedia of Automobile Law and Practice (1946) § 2865:

"The modern rule, supported by the weight of authority, is that the negligence of a bailee in the use of the subject of the bailment such as an automobile contributing to its injury cannot be imputed to the bailor, so as to preclude recovery by the latter for the negligence of a third person also constituting a proximate cause of the injury, unless such bailor and bailee also sustain the relation of employer and employee, or of principal and agent, or a partnership, or family relation exists, and not then unless the bailee is acting within the scope of his employment."

This text among other cases cites Gagle v. Heath, supra, in which the daughter was driving the car. Unfortunately, the Indiana court does not discuss the particular relationship of parent and child or the underlying reasoning on which the decision is based but summarily disposes of the situation 53 N.E. 2d at page 548, by quoting Lee v. Layton, 95 Ind. App. 663, 167 N. E. 540, 541:

" ' * * * the weight of authority in the later cases is decidedly in favor of the rule that the contributory negligence of the bailee is not imputable to the bailor so as to preclude his recovery of damages from a third person for negligently injuring the bailor's property. * * * ' "

We are well aware of the equities favoring defendand and heretofore mentioned in an article entitled "Imputed Contributory Negligence in Automobile Bailments," 82 University of Pennsylvania Law Review (1933-34), pp. 213-229. Mr. Reno in that article discusses the majority and minority views, the effect of the Family Purpose Doctrine on holding in these cases, the social necessity of establishing vicarious liability of the bailor by legislation, and indicates the difficulty of courts in attempting to undertake such legislation as their own responsibility.

In Texas, a state which is one of the principal exponents of the imputation of liability theory, the Texas Law Review at Volume 6, p. 111, discusses Munster v. Hexter, Tex. Civ. App., 295 S.W. 245. This case, relying upon Texas & P. Ry. v. Tankersley, 63 Tex. 57, and Note, 17 L.R.A. (N.S.) 925, held that a bailee-driver's negligence was imputable to the bailor-owner. The author of the law review article at 112 points out inter alia that the Note, 17 L.R.A. (N.S.) 925 has been superseded by other notes in the same series holding that in most cases negligence is not now so imputed. The author further says that "both the better reasoning and the weight of authority would seem to be against the view set out in the principal case [Munster v. Hexter, supra]." An objective analysis of the general law on the subject is found in Note, 14 Va. L. Rev. (1928) 305, in which the author states inter alia at 306:

"Most of the cases decided since 1900 have enunciated the rule that the bailee's contributory negligence will not be imputed to the bailor. It is believed that this is the sound view."

It is interesting also to note the dissent of Chief Justice Alexander in the latest Texas case on the subject, Rose v. Baker, 138 Tex. 554, 160 S.W. 2d 515, 517, in which the court cited all previous authorities of that

jurisdiction on the subject and held that the bailee's negligence was imputable to the bailor.

"While I recognize that this Court, in the cases cited in the majority opinion, has heretofore held in accordance with the rule announced therein, yet I am of the opinion that such holding is clearly wrong, and should be overruled. It is contrary to the decided weight of authority in other jurisdictions. 6 Am. Jur. 393; 6 C.J. 1168; 8 C.J.S., Bailments, § 56, p. 373. I see no reason why we should continue to follow an erroneous rule, where no property rights or other vested rights have been acquired thereunder."

The majority rule has also been accepted and enunciated in A.L.I. Restatement, Torts (1934) § 489, in which it is stated: "The contributory negligence of a bailee of a chattel does not bar the bailor from recovery."

An analysis of the foregoing authorities indicates that the rule generally accepted and extensively followed in the United States is that the negligence of a bailee cannot be imputed to his bailor so as to defeat the bailor's recovery for injury to the bailed article; and this rule is not altered by a husband-wife or a parent-child relationship in any given case.

We proceed next to consider whether the proof of damages of plaintiff Roy L. Wilcox was sufficient to sustain the judgment. We think that defendant in his brief gives a fair summary of plaintiff's testimony on this point:

"Roy Wilcox testified he owned the car, having purchased it about a year prior to the accident, and that he had done some mechanic work upon it. He testified he had some experience in buying and selling automobiles, and that he knew the value of the car; that he had engaged in buying and selling used cars over a period of some seven years. That he had no dealing with any 1941 Pontiac other than the one involved. That the value of his automobile was 'aproximately $900.' That he was offered $25 for it after the accident, and such sum was the salvage value of the automobile.

On cross-examination, he first stated he had sold quite a few cars, then qualified the statement by testifying that he actually did not sell the cars, that he merely advised the prospective seller of his opinion of the value of the cars; that he did not actually close the sales, but merely arranged for a prospective purchaser to get together with the seller; that his testimony of salvage value of $25 was based upon an offer given him by a junk dealer; that a used tire is worth $3, or $4, or $5; that the motor would be worth anywhere from $10 to $15. That he sold the car for $50, and prior to selling it he removed two tires and did not replace them prior to selling the car."

Analyzing some of the rules relating to testimony of damage to motor vehicles, we find the following:

" * * * the basic rule in measuring damages from wrongfully injuring an automobile is just compensation for actual loss. So, if an injured automobile can be repaired, the measure of damages is the cost of repair and the value of its use pending repair. * * * "Where the loss is total or there is a complete destruction of the vehicle for all purposes, so there is no question of salvage involved, the measure of damages is the reasonable value at the time of the loss.

"In such cases, the rule of just compensation generally fixes the basis of calculating the damages as the difference between the fair market value of the vehicle at the time and place, immediately before and immediately after the injury." 6 Blashfield, Cyclopedia of Automobile Law and Practice (1945) § 3411.
See the same effect 17-18 Huddy, Cyclopedia of Automobile Law (9th Ed.) §§ 253, 263.

This method of establishing damages was not followed in the instant case—at least not with any degree of particularity.

As to the knowledge of Roy L. Wilcox to testify regarding the value of the automobile, we find the following authorities:

" * * * the witness, before he refers to the matter in hand, *must make it appear that he had the requisite opportunities to obtain correct impressions* on the sub-

ject; and the first questions put to him should be and usually are directed to laying this foundation." 2 Wigmore on Evidence (3rd Ed.) § 654.

See to the same general effect 70 C.J., Witnesses § 111; 58 Am. Jur., Witnesses § 113.

Plaintiffs' counsel apparently thought that the testimony of Roy L. Wilcox as to value of the automobile would be competent merely because he was the owner thereof. This is not true unless he had an opportunity to know what the value was.

" * * * where it plainly appears in any case that the owner has no knowledge of the value he expresses an opinion about, the presumption arising from ownership is overcome and his opinion is inadmissible." Annotation, 37 A.L.R. 2d 967, 985.

We are cognizant of the relaxation of the rules of admissibility on damages as illustrated by different examples in 6 Blashfield, Cyclopedia of Automobile Law and Practice (1945) § 3430; but we think that the evidence of the damages presented in this case falls short of even such relaxed requirements.

With reference to the third contention of defendant, we examine the finding of the court in the judgment: "That the defendant [Herbst] was negligent in leading his horses upon the highway at night time without displaying a warning light;"

This amounted to a determination by the trial court that the failure to display such a warning light was negligence *as a matter of law,* and regardless of any other existing circumstances.

Wyoming's only law effective at the time of the accident requiring lights for animals, and this only indirectly, was § 60-311, W.C.S., 1945 (similar provisions now embodied in § 60-607, W.C.S., 1945, amended and re-enacted by S. L. of Wyoming, 1955) :

"Every person riding a bicycle or an animal or driving any animal drawing a vehicle upon a roadway shall be subject to the provisions of this Act [§§ 60-301—

60-710] applicable to the driver of a vehicle, except those provisions of this Act which by their nature can have no application."

Clearly, this statute does not relate to the facts in the present case. We must therefore be governed by the general law on the subject, and the authorities disclose the following:

"In the absence of any statute so requiring, it is not negligence as a matter of law to drive cows along the highway after dark, or mules harnessed, but not hitched to the vehicle, or to lead mules b yhaving them tied to the rear of a vehicle without carrying a light, nor can it be ruled as a matter of law that the failure of a pedestrian upon a main highway to carry a lantern after dark, even though leading horses, is want of due care, precluding recovery for injuries to him by an automobile." 2 Blashfield, Cyclopedia of Automobile Law and Practice (1951) § 854.

"A pedestrian leading a horse or driving a cow on a public highway after dark is not, in the absence of statute, required to carry a light." (3-4 Huddy, Cyclopedia of Automobile Law (9th Ed.) § 84.

Statement from some of the cases cited by these texts reveal the views of the courts before whom the problem has been presented:

"Defendant was within his rights in driving his mules along the highway. No applicable law or municipal ordinance requires that mules not hitched to a vehicle shall be accompanied after dark by a light." Pollet v. Robinson Lumber Co., 10 La. App. 760, 123 So. 155.

"The two mules killed were not hitched to or engaged in hauling the vehicle. They were being led along the highway   *   *   *   .

"We find the law to be: 'In the absence of statute or ordinance it is not negligence to ride or drive animals not hitched to a vehicle along the highway after dark without a light.' Huddy's Cyc. of Automobile Law, vols. 5, 6, § 24, p. 395; Pollet v. Robinson Lbr. Co., 10 La. App. 760, 123 So. 155; Pepper v. Walsworth, 6 La. App. 610." Meredith v. Kidd, La. App., 147 So. 539, 541.

"The case before us shows that the two cows were walking quietly along on the right-hand side of the road, in charge of the plaintiff's employe'. * * *

"It is suggested that he ought to have carried a light. But the law does not expressly require it, and we cannot say as matter of law that it was necessary. Indeed, a light would not have saved him, for, as we have seen, the lights of the automobile brought him into the driver's plain view when the car was yet 18 or 20 rods away. * * * The simple truth is that the whole question is one of fact. It is one of those practical questions especially adapted to the consideration of men of common sense and experience, and cannot be ruled as a question of law." Bombard v .Newton, 94 Vt. 354, 111 A. 510, 512, II A.L.R. 1402.

" * * * while leading two horses on the right of the middle of a much-traveled highway near the town of Weymouth, the plaintiff's intestate, walking on the left of the horses but still to his right of the middle of the way, was fatally injured * * * .

" * * * It cannot be ruled as matter of law that failure of a pedestrian upon a main highway to carry a lantern after dark, even though leading horses, is want of due care. Manifestly, in view of said chapter 553 [St. 1914] no such ruling could have been made. Mercier v. Union Street Railway Co., 230 Mass. 397, 119 N.E. 764. St. 1914, c. 182, relative to lights on vehicles, has no pertinency." Powers v. Loring, 231 Mass. 458, 121 N.E. 425, 426.

A determination of defendant Herbst's negligence cannot be made from a consideration of the light problem *alone*. See Bombard v. Newton, supra. It must take into account various factors, such as the general conditions surrounding the accident, the position of the participants and their actions at and immediately prior to the impact. John Wilcox said that the horses were on the highway at the time of the collision, and Frank J. Herbst said the horse which was hit was then in the borrow pit and the other one was off the highway. This created a substantial conflict in the evidence which the trial court was entitled to resolve; and this

court must assume that the evidence in favor of the successful party is true, leaving out of consideration entirely the evidence of the unsuccessful party in conflict therewith. Willis v. Willis, 48 Wyo. 403, 429, 49 P. 2d 670, 678. Nevertheless, this conflict placed in issue the question of whether or not the accident was due to the sole negligence of John Wilcox. We think that this issue cannot be resolved by merely finding "the defendant was negligent in leading his horses upon the highway at night time without displaying a warning light."

During the presentation and consideration of this case, questions have been raised regarding the equitable results of a rule which prevents the imputation of a bailee's negligence to a bailor in a family relationship. Similarly, there has been discussion of the practical desirability of a rule that failure to provide lights on animals on a public highway is negligence as a matter of law. It is not proper for us to pass upon these points since our function is to determine and delineate the existing law, leaving to the legislature the duty to change any provisions which are deemed undesirable. A similar thought was voiced by Chief Justice Riner in the case of Sare v. Stetz, 67 Wyo. 55, 76, 214 P. 2d 486, 494, when, in discussing the Family Purpose Doctrine, he said:

" * * * the question presented in this case should be treated as one of state policy purely and as such to be disposed of by the legislature of this state as it may hereafter see fit to do. We must decline to do violence, as we view the record herein, to long and clearly established rules * * * ."

For the reasons above stated, the case is reversed.

*Reversed and remanded.*

BLUME, C. J., and HARNSBERGER, J., concur.