Dale D. DAVISON, d/b/a Davison Conoco
Service Station, Appellant (Defendant
below),

v.

AMERICAN EMPLOYERS INSURANCE
COMPANY, a Corporation, Appellee
(Plaintiff below).

No. 3529.

Supreme Court of Wyoming.

Dec. 1, 1966.

David N. Hitchcock, Laramie, for appellant.

Alfred M. Pence, of Pence & Millett, Laramie, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

American Employers Insurance Company, having been subrogated to the claim of its insured, Colorado Motorway, Inc., sued to recover damages suffered by the insured when one of its buses was burned at the filling station of Dale D. Davison, defendant. Trial was to the district court without a jury. It found in favor of plaintiff and gave judgment for $3,250 and costs. Defendant-Davison has appealed.

The issues raised on appeal call for our consideration of these questions:

1. Was there sufficient evidence for the trial court to find defendant's employee who serviced the bus chargeable with negligence which was the proximate cause of the accident?

2. Was the bus driver or his company guilty of contributory negligence?

3. Was there adequate proof of damages for the amount awarded?

There seems to be no real dispute about the facts. Early in the morning on the day of the accident, William A. Cagle, the bus driver, an employee of Colorado Motorway, Inc., drove a bus into defendant's service station, stopping the bus beside a pump. He got out and asked defendant's employee, Ralph Foster, to fill the bus with gas. While Cagle was still standing by, Foster opened the servicing flap closest to the pump, removed a cap from the filler pipe thereby exposed, and inserted the automatic nozzle of the hose from the pump. He then started gasoline into the filler pipe and went to wait on another customer. Cagle then went into the station building.

After Foster's other customer left, he noticed gasoline coming out from underneath the bus on the driveway. He therefore shut the nozzle off and asked Cagle to move the bus off the driveway so he could wash the gasoline away. Cagle entered the bus to do so, but when he attempted to start the motor the gasoline was ignited and the flames came out from under both sides and the front of the bus. Cagle got out safely, but the bus burned and was destroyed.

After the fire, it was found that the pipe into which Foster had put gasoline was the oil pipe. Instead of going to the gasoline tank of the bus it went to the crankcase of the motor. It was not disputed that the filler pipe into which gasoline should have been put was to the rear of the bus and beyond the reach of the hose from the pump beside which Cagle had stopped.

Neither Foster nor Cagle knew until after the fire that the pipe into which Foster had put gasoline was the oil pipe. Cagle, although an experienced bus driver, testified he had driven this particular type of bus not more than twice before; that he had been taught certain things about the bus; but he had not been shown the proper openings into which oil and gasoline should be introduced.

Foster and Cagle seemed to agree, and it stood undisputed, that both the cap on the oil pipe and the cap on the gasoline pipe of this bus had either the word "gas" or the word "gasoline" on them. However, under cross-examination Foster could not be sure he had noticed such labeling on the cap removed by him at the time he removed it. On that subject he testified: "I am not real certain of it, no. It was dark." Also, Foster admitted when he started the gasoline in he saw a gauge nearby. It proved to be the oil gauge.

When Cagle attempted to start the bus, it backfired a couple of times. It had also backfired when he started it at the garage earlier that morning. Foster believed the backfiring was what ignited the gasoline, but the evidence on this subject was in conflict. Cagle testified gasoline was under the bus, in the middle, but none toward the rear. Also, it seems clear the flames came out the sides and front rather than from the rear where the exhaust pipe ends. Witnesses who viewed the bus afterwards testified the fire had been concentrated in the motor or engine area. The testimony of an expert witness was that the gasoline would have been more readily ignited by a spark from the starter, battery or electrical system.

*Negligence of Defendant's Employee*

█ There seem to be no questions of law for us to settle in this case. We have said many times before that questions both of negligence and of contributory negligence are for the trier. We need not continue to cite authority for this proposition. If there is substantial evidence of negligence or a conflict in the evidence relative thereto, we must accept the decision of the fact finder as final.

█ Here, the trial judge was entitled to believe Foster, as an experienced service station attendant, should have used more care in finding out where gasoline was supposed to go in a bus unfamiliar to him; or that he should have been warned when gasoline was under the bus without the filler

pipe having filled sufficiently to shut off the automotic nozzle; or that he should have been warned by the oil gauge which was visible where he attempted to fuel the bus with gasoline. The accident did not happen without a cause, and Foster was the actor who caused it. Under these circumstances we cannot say the evidence was insufficient for the trial court to find negligence on the part of Foster, defendant's employee.

### Contributory Negligence

Defendant claims the bus company was guilty of contributory negligence because it allowed the wrong cap to be on the oil intake pipe; because its driver, Cagle, was not instructed as to the place where gasoline was to be added and therefore did not warn Foster; and because the driver of the bus did not warn Foster of the tendency of the bus to backfire. Other claims of contributory negligence were asserted, but they relate to matters, none of which could have been a contributing cause of the accident. We need not mention them.

Of course, as we have already indicated, the testimony of Foster pertaining to the wrong cap on the oil pipe was such that the judge could have believed it was not a proximate cause of the accident. Also, the evidence was in conflict with respect to whether the fire was started on account of the bus backfiring. In any event, no matter what claims of contributory negligence have been made, it was for the trier to say whether the bus company was negligent, and if so, whether it was a contributing and proximate cause.

■ Where the trial court, as in this case, has found no contributory negligence, the appellate court must accept such finding and be bound by it, unless it can be said there was contributory negligence as a matter of law. See Honan v. Moss, Wyo., 359 P.2d 1002, 1008; and Loney v. Laramie Auto Co., 36 Wyo. 339, 255 P. 350, 353, 53 A.L.R. 73. We cannot in this instance say Cagle or his company was contributorily negligent as a matter of law.

### Damages

The plaintiff offered the testimony of an expert witness as to what it would have cost to repair the bus after the fire. His testimony showed it would cost well over $4,000 for repairs and that the bus was damaged far more than the amount for which it was insured. The limit of plaintiff's liability under its insurance was $4,000; and the bus company allowed $750 for the salvage value of the bus. The net cost to the insurance company was therefore $3,250. The court gave judgment for that amount.

The defendant contends plaintiff failed to prove what the bus was worth before and after the accident; that the difference between such values is the proper measure of damages; and that in the absence of proof as to the before and after values, plaintiff is not entitled to recover at all. For this proposition defendant relies on Wilcox v. Herbst, 75 Wyo. 289, 295 P.2d 755, 760.

The situation in the Wilcox case was one where the loss was total and there was a complete destruction of the vehicle for all purposes. This court said in that instance the measure of damages was the reasonable value at the time of loss. It went ahead to speak approvingly of the method of calculating damages by taking the difference between the value of the vehicle before and after an accident.

What was said in the Wilcox case, however, falls far short of saying or implying that the before and after method of calculating damages is the only just and fair method. No hard and fast rule on the measure of damages can be laid down for all cases. The primary objective is to determine the amount of the loss, and whatever rule is best suited to the purpose should be adopted. North Central Gas Company v. Bloem, Wyo., 376 P.2d 382, 385. See also Rocky Mountain Packing Co. v. Branney, Wyo., 393 P.2d 131, 134–135; and Rogers v. Hansen, Wyo., 361 P.2d 676, 678.

■ The defendant was entitled to cross-examine plaintiff's expert witness on the cost of repairs and on his determination

that the bus was damaged beyond the amount of the insurance coverage. Also, defendant was entitled to offer his own evidence on damages, using the same or a different measure of damages. But of course any method of calculating damages must be free from valid objections. In the absence of defendant having objected to plaintiff's method of arriving at damages and in the absence of evidence on damages being offered by defendant, he cannot complain if the evidence of plaintiff was accepted by the court.

We find the judgment of the trial court supported by sufficient evidence in all respects. Such judgment must therefore be considered final and not reversible.

Affirmed.