Gus I. KELLY and McNamara Realty, Appellants (Defendants),

v.

John E. ROUSSALIS, II, D.D.S., Appellee (Plaintiff).

No. 88–282.

Supreme Court of Wyoming.

July 25, 1989.

Jerry A. Yaap of Bishop, Bishop & Yaap, Casper, for appellant Gus I. Kelly.

Phillip T. Willoughby, Casper, for appellant McNamara Realty.

James R. McCarty, Casper, for appellee.

Before THOMAS and MACY, JJ., RAPER, Ret. J., and TAYLOR and KALOKATHIS, District Judges.

RAPER, Justice, Retired.

This is an action in tort for the alleged negligence of appellant Kelly as a real es- tate agent in advising appellee Roussalis that real property purchased by appellee at a sheriff's foreclosure sale was the same property previously shown by Kelly to ap- pellee when in fact it was not. Appellant McNamara Realty is the real estate broker which Kelly was representing. The district court found in favor of appellee and a judgment was entered accordingly.

Appellant Kelly represents the issues to be:

I.   Whether the trial court erred in find- ing that appellant Kelly was operating as an agent and professional advisor for appellee.

II.   Whether the trial court erred in ad- mitting the testimony of Robert Tomb pertaining to the duties of a real estate agent as reflected in page 8–11 of his deposition.

III.   Whether the district court erred in the assessment of damages in that appel- lee failed to mitigate damages.

Appellant McNamara Realty perceives the issues to be:

1.   Whether the District Court erred finding defendant Gus Kelly an agent and professional advisor for plaintiff Roussalis.

2.   Whether the District Court as a matter of law erred finding defendant McNamara Realty liable to Roussalis as a result of the actions of defendant Gus Kelly.

Appellee Roussalis sets out the issues as:

I.   The trial court did not err in finding that the appellant Kelly was operating as an agent and professional advisor for appellee.

II.   The trial court did not err in admit- ting the testimony of Robert Tomb.

III.   The district court did not err in the assessment of damages.

IV.   Argument No. One—McNamara.

V.   The district court did not err in find- ing the defendant McNamara Realty lia- ble to Roussalis as a result of the actions of the defendant, Gus Kelly.

We will affirm the district court.

Appellee had used McNamara Realty and Kelly in real estate transactions prior to

the one here in question. Appellee had purchased an office building through them; they had made an offer to purchase a home for him, had helped him try to find a home and, related to the current case, had showed him a home, 5600 South Poplar, Casper, Wyoming, even though the property had been listed with another real estate agency. Appellee thought Kelly was his realtor, and he felt comfortable with him and that Kelly should be doing appellee's real estate business. It was thus through this connection that the parties became embroiled in the litigation now before us.

After viewing 5600 South Poplar, listed at some $600,000, appellee indicated that price to be much more than he was willing to pay. Kelly advised appellee that the owner was having financial difficulties and that there would probably be a forced sale at a later time at which a better price could be obtained.

Appellee advised Kelly that if he was able to obtain another home, he would have to list his present home with appellants because of the burden of supporting two residences. Kelly indicated agreement.

Mrs. Roussalis, appellee's wife, saw a legal notice that legally described property owned by the owner of 5600 South Poplar, which latter property she and appellee had suspected by reason of Kelly's representations would be sold at a public foreclosure auction. Appellee called Kelly and asked him to find out if that was the same house he and Mrs. Roussalis had been shown by Kelly. Kelly agreed to look into the matter. Kelly assumed and advised appellee that it was.

Appellee decided to attend the sale and bid. He asked Kelly to go with him. Kelly advised appellee that he would have to pay for the property so appellee arranged for a loan of $250,000 and a letter of credit. Kelly attended the sale with appellee and agreed to do the bidding. The mortgagee bid $97,000 and Kelly jumped the bid of appellee to $150,000. It was Kelly's idea to do so in order to shut out other bidding. Appellee relied upon the real estate expertise of Kelly. Kelly and appellee thought the bid was being made on the South Poplar property. Kelly went to the bank to obtain a check for payment, as arranged by appellee, and paid the sheriff.

It was subsequently learned that the house sold and paid for by appellee was a property different than the one shown appellee by Kelly. Kelly advised appellee that he, Kelly, would get the sale set aside. Appellee relied upon Kelly to do so because of the latter's expertise as a real estate agent. Kelly, if he made the effort, was unable to do so, leaving appellee with a $150,000 debt plus interest accrued at the date of trial in the sum of $28,261.04.

Kelly agreed at the trial in his testimony that he had the information available in his office to check the legal descriptions. He admitted to not checking, testifying that he was busy at the time with "other stuff." Kelly knew that the descriptions could also have been verified with a telephone call to the county assessor who could provide street addresses for legal descriptions but Kelly did not make such inquiry.

Other facts may be mentioned as required during the further structuring of this opinion.

In *Hagar v. Mobley*, 638 P.2d 127, 136 (Wyo.1981), this court pointed out the high standards to which real estate salesmen and brokers are held with respect to the public. Being licensed by the State as they are, they "must be construed in the light of an obvious purpose of protecting the public in the handling of important and valuable transactions relating to real property," citing *Toavs v. State by and through Real Estate Commission*, 635 P.2d 1172 (Wyo. 1981). In *Hagar*, the court cited *McCarty v. Lincoln Green, Inc.*, 190 Mont. 306, 620 P.2d 1221 (1980) where the Montana court observed that failure to maintain high standards of skill, competency and integrity exposes realtors to, in effect, malpractice actions with respect to standards of care and held a realtor liable to a vendee for showing him the wrong property. Failure to provide a correct description is negligence. *McCoy v. Thompson*, 677 P.2d 839 (Wyo.1984).

█ There can be no doubt that Kelly was negligent. He had within his office the necessary information to verify whether the property advertised for foreclosure was the same property he had shown appellee. Or Kelly could have telephoned the county assessor to determine the address of the foreclosure property. He assumed a key fact of great importance in a real estate transaction.

█ It is the claim of Kelly that he was not acting as a real estate salesman but only as a friend because the broker with whom he was attached had a policy against attending foreclosure sales since there was no money in it due to the absence of a listing in such transactions. By this defense, Kelly is merely saying he owed no duty of care to appellee. We do not accept such a position.

The Wyoming Supreme Court has subscribed to the rule, insofar as it relates to the conduct of a volunteer, that:

"One who undertakes, gratuitously * * * to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, * * *."

*Ellsworth Brothers, Inc. v. Crook,* 406 P.2d 520, 524 (Wyo.1965).[1]

By volunteering, Kelly became subject to liability to appellee in his failure to exercise not only reasonable care but the high degree of care expected of a real estate salesman. The office policy of McNamara Realty is irrelevant once Kelly embarked as a volunteer. Not at issue in this case is any possible liability of Kelly to McNamara Realty for Kelly's disregard of office policy, so we voice no opinion in that regard.

█ The final important issue is the liability of McNamara Realty to appellee. William E. McNamara of McNamara Realty admitted in his testimony that McNamara Realty was responsible for its salesmen's actions through their employment, and that when Kelly acted as a salesman McNamara Realty was responsible for the actions of him as a salesman.

An important part of the realty business is the obtaining of listings of property to sell and many of those listings come from friends of the broker and his salesmen as well. It is part of the work of a real estate salesman to obtain listings for the broker by whom he is employed. While in this case we take no position as to whether Kelly's obtaining a listing for the sale of appellee's residence upon his purchase of another residence was consideration in a contract sense, it is certainly reasonable to conclude that it was a motive and was within the scope of his employment. Many efforts to obtain listings prove fruitless but such efforts are still an important part of the real estate business.

Real estate brokers do have the right of control and do control the conduct of their salesmen. The broker is the master and the salesman is his servant, which relationship arises out of the right of control. In Wyoming, as a matter of public policy and economic requirement, the master is liable for damages caused by the negligence of his servant while acting within the scope of the servant's employment. *Combined Insurance Company of America v. Sinclair,* 584 P.2d 1034 (Wyo.1978); *Blessing v. Pittman,* 70 Wyo. 416, 425, 251 P.2d 243, 246 (1952). See also *Stockwell v. Morris,* 46 Wyo. 1, 22 P.2d 189 (1933). As we view the facts, there was a right in McNamara Realty to control the work of Kelly and the conduct of Kelly who was acting within the scope of his employment requiring him to hustle for a listing and properly checking out property descriptions. A master-servant relationship existed. *Beard v. Brown,* 616 P.2d 726 (Wyo.1980).

█ We will deal only briefly with appellants' objection to the deposition testimony of Robert Tomb, an expert called by appellee. The trial judge, after objection by appellants, did strike all his testimony ex-

---

**1.** Quoting Restatement of the Law (Second), Torts, § 323 (1981). Ellsworth Brothers, Inc. cites it as Rule 324, but apparently on reprint its position has been adjusted since 1965.

cept pages 8–11. The relevant testimony on those pages deal with the manner in which legal descriptions can be checked to determine street addresses by referring to the multiple listing service data sheets supplied to the offices of all brokers and available to their salesmen and by telephoning the county assessor. The expert testified that he followed this procedure and discovered that the property Kelly bid on was a different address than the property he had shown appellee.

This was only part of appellee's proof of Kelly's negligence in not taking the proper steps to check the description. It was probably, at the most, cumulative in that Kelly admitted the availability of the information in his office and that a telephone call to the county assessor could have resolved any question about the description. He just was occupied with other "stuff" so assumed they were the same property.

The last ten lines on page 11 covered questions of law related to agency. The only expert in the courtroom on questions of law was the district judge, and he needed no advice from a layman, even though well-informed, on the law of agency and the standard of care required of a real estate agent. We cannot see how those few legal opinions of the expert could have in any way influenced the court or, in any way, been prejudicial to appellants.

Affirmed.