Ben HINKLE, Appellant (Plaintiff below),

v.

Sam SILTAMAKI and Palm Livestock Co., a Wyoming corporation, Appellees (Defendants below).

No. 2948.

Supreme Court of Wyoming.

April 17, 1961.

J. R. Armstrong and K. W. Keldsen, Rawlins, for appellant.

Brimmer & Brimmer, Rawlins, for appellees.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This is an appeal from a summary judgment dismissing the complaint of plaintiff who sought $50,000 damages for injuries caused when his automobile collided with defendants' horses on the highway near Medicine Bow. According to the complaint, plaintiff on April 22, 1955, at one-thirty in the morning, was driving one automobile and pulling another on U. S. Highway 30 when he struck defendants' horses which had been "unlawfully and negligently permitted * * * to run at large * * * on said fenced public highway."

Defendants filed a motion to dismiss the complaint because it did not state a claim upon which relief could be granted. The parties submitted and responded to interrogatories, and the court thereupon issued an order that the motion to dismiss be treated as a motion for summary judgment, allowing sixty days for discovery processes. Following the hearing, the court issued a summary judgment, dismissing the complaint, and finding inter alia:

"* * * That the plaintiff has, by his own admission * * *, no evidence other than the fact of the defendants' ownership of horses and their presence upon the highway * * * that the defendants unlawfully and negligently permitted their horses to run at large in and upon a fenced public highway * * *.

"* * * That the accident * * * occurred on a highway right of way which was fenced by the Wyoming Highway Department, adjacent to an open range area of the County of Carbon, State of Wyoming; and

"* * * That a determination of the other issues of fact involved herein is thereby rendered unnecessary

"And the Court having concluded as a matter of law:

"* * * That Section 56–1813, Wyoming Compiled Statutes of 1945, as amended, making it unlawful for any person, persons, company or corporation *being the owner of livestock of any kind or having custody or charge thereof knowingly, willfully or intentionally to permit said livestock to run at large in any fenced public lanes or fenced roads in the State of Wyoming, does not impose a liability upon the owner of livestock for livestock turned loose upon the open range which stray into any fenced public lanes or fenced roads in the State of Wyoming without the knowledge of the owners thereof;*"

Plaintiff argues that the judgment was erroneous for several reasons:

(a) The Wyoming statute [1] imposes a positive duty to keep horses off fenced highways, and a failure to do so constitutes actionable negligence.

(b) In the light of modern traffic conditions, even in the absence of statutes, livestock owners are obligated to keep their animals off public highways and can reasonably anticipate that unless they do so injury will be caused to motorists.

(c) Upon a showing that animals are present on the highway and that their presence proximately caused his injuries, plaintiff made a prima facie case of negligence and defendants thereafter had the burden of explaining the presence of the horses on the highway and showing that they had exercised reasonable care to keep them off the fenced highway.

(d) The summary judgment was improper because there existed a genuine issue of material fact concerning negligence and the ruling deprived the plaintiff of the right of cross-examination of defendants, their agents, and their employees; the right to submit evidence; and the right to present the matter for the determination of a jury.

Defendants on the other hand argue that the statute does not impose an absolute duty to prevent livestock from wandering on the highway but rather that scienter is essential to the establishing of any liability for a violation. They contend further that the owner is not negligent unless he is so proved and unless there is a showing that his lack of reasonable care is the cause of the injury. Under this rationale they insist that the rule of res ipsa loquitur has no application—that there is no obligation upon the owner of livestock to explain the presence of his animals on a fenced public highway. Accordingly, they argue that the summary judgment is proper because here by uncontradicted evidence the horses wandered upon the highway without knowledge of the defendants.

The statute under consideration in this case was first passed by the legislature in 1919 and excluding the penalty section read:

"It shall be unlawful for any person * * * to turn any domestic stock, saddle, or work horses in any public lanes or fenced road in the State of Wyoming for grazing purposes, during the months of May, June, July, August and September." C. 109, S. L. of Wyoming, 1919.

In 1921 this was amended to read:

"It shall be unlawful for any person * * * *to permit live stock of any kind, to run at large* in any public lanes or fenced roads in the State of Wyoming. Any person * * * violating the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars ($10.00) nor more than one hundred dollars ($100.-00) *and in addition shall pay all damage done by such stock unlawfully permitted to run at large in such lanes or roads; Provided that the provisions of this act shall not apply to range stock drifting into lanes or fenced roads in*

---

1. The statute effective at the time of the accident was c. 50, S.L. of Wyoming, 1951.

*going to, or returning from their accustomed ranges."* C. 108, S. L. of Wyoming, 1921. (The italicized portions indicate changes from the original statute.)

The legislature by c. 50, S. L. of Wyoming, 1951, amended the statute by adding various sections relating to the duties of officers, impounding fees, sale, etc., and altered the portion germane to this controversy to read:

"It shall be unlawful for any person * * * to permit live stock of any kind, to run at large in any public lanes or fenced roads in the State of Wyoming. Any person * * * violating the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars ($10.00) nor more than one hundred dollars ($100.-00) and in addition shall pay all damage done by such stock unlawfully permitted to run at large in such lanes or roads; provided that the provisions of this Act shall not apply to range *cattle* drifting into lanes or fenced roads in going to, or returning from their accustomed ranges." (The italicized portion indicates the change from the 1921 statute.)

Although the legislature further amended the law by c. 15, S. L. of Wyoming, 1955, and c. 71, S. L. of Wyoming, 1957, neither were pertinent in this instance since the 1951 statute was in effect on the date of the accident.

Any interpretation of the Act must undoubtedly be made in the light of legislative changes between the time of the original passage of the law and the date of the accident. In 1921 the lawmakers substituted the words "to permit" for "to turn" and the word "livestock" for horses or domestic stock, and additionally provided that an offender should pay damages caused by the stock unlawfully permitted to run at large—

excepting range stock drifting into lanes or fenced roads in going to or returning from their accustomed ranges. The only 1951 change in the portion of the law which affects the present situation was the substitution in the exception of the word "cattle" for "stock."

Plaintiff urges that by the changes the legislature obviously intended to broaden the provisions of the original statute by eliminating the requirement of an intentional overt act in turning the livestock into the public lane or fenced road, by making the owner liable for damages, and by eliminating the seasonal aspect of the prohibition. He also argues that in 1951 the exception was specifically limited to cattle and did not then relate to horses.

Defendants counter that the trial court was justified in inserting in the statute by implication the words "knowingly, willfully or intentionally" before the words "to permit" so that scienter on the part of the horse owners becomes indispensable to liability.

Since this court has never had occasion to speak on the subject but has from time to time been called upon for its views on various matters relating to the care of livestock and responsibilities of the owners therefor, it is apropos to appraise our holdings as a background for interpretation of the legislation here in dispute.

Judge Potter in Haskins v. Andrews, 12 Wyo. 458, 76 P. 588, 590, presented a statement which fairly represents the 1895–1906 [2] attitude of this court toward the obligation of livestock owners and their responsibility for trespass on the lands of others:

"It is not the law in this state that the owner of cattle is required to confine them, or to prevent them from straying or wandering upon the uninclosed premises of another, or, in default thereof, to respond in damages for their trespasses upon uninclosed

2. Hecht v. Harrison, 5 Wyo. 279, 40 P. 306; Cosgriff Bros. v. Miller, 10 Wyo. 190, 68 P. 206, 98 Am.St.Rep. 977; Hardman v. King, 14 Wyo. 503, 85 P. 382.

lands. That is the common-law rule, but it is and always has been inconsistent with the conditions and customs existing here. * * * "

In 1918, Judge Potter again spoke in Garretson v. Avery, 26 Wyo. 53, 176 P. 433, approving the former holdings but noting that it is not the duty of a landowner to fence against cattle or livestock of another in the absence of statute.

Plaintiff cites the case of Sowers v. Corthell, 69 Wyo. 215, 240 P.2d 891, which admittedly contains some statements from which he can draw comfort, but it relates to a municipal situation, and the facts therein are clearly distinguishable from the case at bar.

Neal v. Wailes, Wyo., 346 P.2d 132, mentioned by defendants, would not seem to be significant since it was held that in a situation where a motorist struck horses which were on a highway it was a question for the jury to determine whether or not the owner had done all that could be reasonably required of him under the circumstances.

Various cases discussing the owner's liability for animals at large on the highway are mentioned in Annotations at 34 A. L.R.2d 1285 and 59 A.L.R.2d 1328. Although a few jurisdictions hold that proof of an animal's running at large raises a presumption of negligence on the part of the owner, or that the doctrine of res ipsa loquitur applies, the majority rule is:

> "Where the particular statute involved provides that the owner shall not 'permit,' 'allow,' or 'suffer' his animals to run at large, the courts have generally held, or recognized, that statutes of this type are not violated in the absence of at least negligence by the owner of the animals." 34 A.L.R.2d 1285, 1289.

See 11 Ala.L.Rev. 364.

A correlation or comprehensive analysis of the cases cited in these authorities would perhaps not be helpful. A representative case of the majority view is that of Favre v. Medlock, 212 Ark. 911, 208 S.W.2d 439, where the court read "knowingly" into a statute which prohibited a horse owner from allowing animals to run at large and held that the evidence of the presence of the horses on the highway was not prima facie evidence of negligence on the part of the owner. A typical holding of the minority is Adamcik v. Knight, Tex.Civ. App., 170 S.W.2d 521,[3] where the court held that proof of ownership of an animal on the highway raises a prima facie presumption of negligence and shifts to the owner the burden of offering evidence.

Other Rocky Mountain states undoubtedly have similar practical problems, but unfortunately, the applicable statutes are dissimilar to that in Wyoming. There is one exception, § 64–18–62(b), New Mexico Statutes, 1953, which reads: "It shall be unlawful for any person to permit live stock to wander or graze upon any fenced highway at any time * * *." However, no cases have arisen on the subject in that jurisdiction.

From what we have said, this is then a matter of first impression, and it is requisite that the court determine whether or not our earlier livestock decisions have been altered by the statute here in issue. These cases were decided at or shortly following the turn of the century when the grazing of livestock upon public lands was an integral part of the foremost industry in the State and when there existed few if any motor vehicles and no improved highways—the court's pronouncements being based upon the customs of the times. Although the court can take judicial notice of the changing circumstances wherein industries other than livestock have increased in importance, fenced highways have been built, and motor vehicular traffic has become an integral part of modern living in the State, these factors alone do not automatically provide an interpretation of the statute. They are circumstances which the legislature *might* have had under

---

3. Approved in Dorman v. Cook, Tex.Civ.App., 262 S.W.2d 744, 747.

consideration in the passing of the forerunner of the statute here in issue and in later effecting amendments thereto. The lawmakers might have apprehended the dangers of motorists traveling upon highways which appear to be fenced but have no cattle guards or other effective closures to prevent animals from coming in off the open range, and they might also have had in mind the inconsistencies of expending huge sums for the fencing without giving the public proper benefits therefrom. Nevertheless, it is not the province of the courts to speculate in this regard, and we are limited to an interpretation of the statute as it stands.

■ According to the weight of authority, courts have had no hesitancy in holding that a statute making it unlawful for an owner of livestock "to permit" them to run at large implies knowledge, consent, and wilfulness on the part of the owner, or such negligent conduct as is equivalent thereto, so that the proof of one of these elements is essential either to a conviction or an assessment of damages growing out of a violation. Sullivan v. State, 21 Okl. Cr. 410, 209 P. 181; Rice v. Turner, 191 Va. 601, 62 S.E.2d 24; Favre v. Medlock, 212 Ark. 911, 208 S.W.2d 439; City of Union v. Lindemann, Mo.App., 242 S.W. 416.

Plaintiff points to jurisdictions where it has been held that the presence on the highway of an animal constitutes the owner's negligence per se or that the doctrine of res ipsa loquitur applies; Annotation 59 A.L.R.2d 1328, 1343, 1351; Corey v. Smith, 233 Ind. 452, 120 N.E.2d 410. However, it must be noted that in all the areas where these rules are applicable the law requires owners of livestock to provide fences which will keep the animals on their property.

■ We do not find the trial court in this case would have been warranted in holding defendants prima facie liable under the facts which were before it on the motion for summary judgment.

Affirmed.