In the Matter of the Appeal of Forest Oil Corporation, Colorado Oil and Gas Corporation, and School District No. 1, Sweetwater County, Wyoming, From the Decision of the District Boundary Board, Sweetwater County, Wyoming, in that Certain Proceeding Entitled "In the matter of Detaching Township 20 North, Range 98 West, Township 20 North, Range 99 West, and the North Half of Township 19 North, Range 99 West, 6th P.M., Sweetwater County, Wyoming, from School District No. 1 (Wamsutter School District) and Annexing Said Lands to District No. 21 (Eden-Farson School District)."

**FOREST OIL CORPORATION and Colorado Oil and Gas Corporation, Appellants (Plaintiffs below),**

v.

**DISTRICT BOUNDARY BOARD OF SWEETWATER COUNTY, Wyoming, Appellee (Defendant below).**

**No. 3487.**

Supreme Court of Wyoming.

Oct. 24, 1966.

A. G. McClintock, of McClintock, Mai & Urbigkit, Cheyenne, R. E. Stevens and Clyde E. Milligan, Denver, Colo., for appellants.

Robert L. Bath, County Atty., and George W. Bird, Rock Springs, Oscar A. Hall, Rawlins, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

School District Number 21, embracing some 21 townships of territory lying in the northwest corner of Sweetwater County, Wyoming, commonly known as the Eden-Farson District, and containing approximately $1,225,000 of assessed valuation for taxation purposes, filed a petition with the district boundary board of said county asking that its boundaries and the boundaries of other school districts within the county be adjusted in a manner to increase the assessed valuation of the district to the approximate sum of $5,000,000, in order that petitioner might provide adequate and necessary educational facilities for children residing therein which was not then possible under the limited tax resources.

District 21 was bounded on the north and west by the county line; on the south by Districts 6, 2, and 4; and on the east by District 4. During the pendency of the matter before the boundary board it apparently developed that the boundaries of the districts mentioned adjoining District 21, for reasons not here important, could not be disturbed, and seemingly District 21 had no

place to go to meet its claimed needs. To solve the dilemma a plan was suggested whereby the board would reach out and join to District 21 two and one-half townships of land embraced within District 1, which incidentally was blessed with substantial oil deposits then being produced. The difficulty encountered was that the nearest boundary of the area selected out of District 1 lay some 45 air miles to the southeast of the eastern boundary of District 21, with the territory of District 4 intervening. Apparently there was no practical way of physically adjoining the boundaries of the selected area to the boundaries of District 21. But that did not dampen the enthusiasm of the supporters of the plan. The boundary board was simply asked to "leapfrog" over the territory of District 4 in order to pounce upon the area in question. Thus it is that counsel for appellants refer to the area as an "island" and we think properly so. It was completely surrounded by the boundaries of Districts 1 and 4.

It is not disputed that the only practical means of travel between the western boundary of the "island" and Farson is the highway running west to Rock Springs, Wyoming, and thence north to Farson, a distance of some 80 miles. The record does not seem definitely to fix the amount of valuation that District 21 hoped to acquire by this means, but inasmuch as its goal was to obtain additional valuation in the sum of $4,000,000, we can assume that such was the assessed valuation of the "island."

After holding several meetings at which interested persons and taxpayers were in attendance, the boundary board undertook to put into effect the plan submitted to it, and in this respect we think the language contained in the resolution adopted for that purpose was rather significant. After reciting that full consideration had been given to the petition and the evidence presented at several public hearings, it was stated that the board "believes that said relief is necessary and essential to the well being of District #21, and, therefore, detaches the following described real property from School District #1 [the "island"] and adds it to School District #21." From this language it will be noted that the resolution did not in any fashion undertake physically to alter or change the previously existing boundaries of District 21. We would also point out that nothing was said of the "well-being" of affected persons and taxpayers in District 1.

Following adoption of the resolution by the boundary board, District 1, Forest Oil Corporation, and Colorado Oil and Gas Corporation—the latter two being taxpayers in District 1—separately appealed to the District Court. Their right so to do under the provisions of § 21–211, W.S.1957, as amended by Ch. 111, S.L. of Wyoming, 1961 (W.S.1957, 1965 Cum.Supp.), has not been questioned. In the lower court the matter was submitted on the record made before the boundary board; and the lower court, after reviewing such record, the briefs of counsel, and hearing argument, entered an order affirming in all respects the action taken by the boundary board. The taxpayers, as appellants, have brought the matter here for review.

They present two basic questions, which, stated in the language employed by their counsel, are:

"1. Does the District Boundary Board have legal authority to take a completely isolated tract out of District 1 and attach it to District 21?

"2. If such legal authority exists, has the Boundary Board acted within the proper and discretionary limits of its authority, that is to say, is there substantial evidence that its action is justified by the existing facts and is not an arbitrary and capricious decision by the Board?"

▮ In connection with the first question presented, it is the contention of appellants that even though there is no express provision in the constitution or statutes of this state requiring a school district to be composed of reasonably compact and contiguous parcels of land, it is nevertheless true as a general rule that the courts will impose

such a requirement absent express legislative or constitutional authority to the contrary. We have examined the authorities cited to us by counsel, along with others, and we are persuaded that appellants' contentions state the more reasonable rule. In re Gooding County Commissioners, 77 Idaho 505, 295 P.2d 695, 699; Petitioners of School Dist. No. 9, Caddo County v. Jones, 193 Okl. 9, 140 P.2d 922, 924; 78 C.J.S. Schools and School Districts § 31 a and b(1), p. 686. Obviously, if the rule is applicable the boundary board was wholly without authority to reach out beyond the unchanged boundaries of District 21 and select and isolate an area in District 1 for the sole purpose of "juggling" the assessed valuation of the affected districts. Consequently, we turn to the constitution and statutes of this state to determine if there is some compelling reason why the foregoing rule of law should not be applied. To accomplish this some review of legislative history upon the question will be beneficial.

For our purposes, we will start with Ch. 42, § 1, S.L. of Wyoming, 1913, which created a district boundary board for each county in the state. The boards were charged with the duty of "laying off their county into convenient school districts." After that had been accomplished it was provided that the board "may alter and change the boundaries of the districts as formed from time to time as the convenience of the inhabitants of the aforesaid districts may require." It will be noted that up to this point "contiguity" is not mentioned and the matter of "convenience" is emphasized. Then following this general grant of power, two contingencies are mentioned. The first dealt with the failure of a district to maintain a school for "twelve consecutive months." In that event it was provided the board "shall abolish or join [such district] in a contiguous district." The second dealt with a district having less than eight pupils. In that circumstance it was said that nothing in the Act should be construed to prevent the board from "joining" such district with "any other school district lying contiguous thereto, if, in the judgment of the board, it will be for the benefit of the public schools so to join such districts."

By Ch. 133, § 1, S.L. of Wyoming, 1921, the legislature amended the 1913 Act and rather materially changed the language with respect to the grant of general powers. The pertinent portion of the amendment after restating the requirement of "convenient" districts read:

"* * * Said board by a majority vote may divide the county into school districts, may alter and change the boundaries of the districts so formed from time to time and may at any time consolidate entire districts or portions of districts when, in the opinion of such board such changes, alterations or consolidations may be justified by existing circumstances and conditions. * * *"

Again "contiguity" is not mentioned except in connection with the contingencies above described, and those provisions were not changed.

By Ch. 119, § 15, S.L. of Wyoming, 1955, however, the legislature did amend the provisions carried forward from the 1913 Act relating to the two contingencies. It removed the word "contiguous" in both provisions and changed the language for the first contingency to read that the board "shall abolish, or combine with another district" a district that had maintained no school for the required period. It changed the language of the second contingency by substituting for the word "joining" the word "combining" and eliminated the words "lying contiguous thereto." No change was made, however, in the grant of the pertinent general powers of the board and those provisions have been carried forward from the year 1921. Section 21–211, W.S. 1957, as amended by Ch. 111, S.L. of Wyoming, 1961 (W.S.1957, 1965 Cum.Supp.).

The principal argument of the appellee in resistance to application of the rule advanced by appellants is that the legislature by removal from the statute of any reference to "contiguity" intended to eliminate

any such requirement as an essential element to be observed by the boundary board in altering or changing school district boundaries.

■ We recognize, of course, as a general proposition that when the legislature by amendment deletes an express provision of a statute the presumption is that a change was intended. Stolldorf v. Stolldorf, Wyo., 384 P.2d 969, 972. Nevertheless, we cannot agree that the rule is of assistance here. As pointed out above, the portion of the statute amended in 1955, whereby the word "contiguous" was removed, related only to the special contingencies described dealing with an entire district and those provisions were in the statute prior to the 1921 amendment. Subsequent to 1921 there was no question of the board's authority to "consolidate entire districts or portions of districts," and under that broad grant it is difficult for us to see how this could reasonably be done without regard to the matter of "contiguity." To "consolidate"—as the word is here used—two or more districts or parts thereof into one district would connote a physical joining together as a whole the lands embraced in the districts to be consolidated. Consequently, it is just as reasonable to say that the word "contiguous" was removed from the special provisions because it served no purpose as to say that it was removed for some other purpose. Changes in phraseology do not always change the meaning given to a statute prior to amendment. The change may result from a variety of reasons. Vincent v. Reeves, 47 Wyo. 117, 31 P.2d 680, 681.

Furthermore, the foregoing change can scarcely be regarded as a compelling reason for the 1955 amendment. From 1913 to 1955 the mandatory special provision relating to the failure of a district to maintain a school contained an absurdity. Any such district, as previously mentioned, that had not maintained a school "for twelve consecutive months" preceding was to be abolished. Such language, if taken literally, would have required the abolishment of every school district in the state because we are unaware of any public school that operates as such through the summer months. Apparently that was eventually recognized and the provision was amended to read:

> "The district boundary board shall abolish, or combine with another district, any school district in which no school has been actually and physically maintained and operated within the exterior boundaries of such district for at least six (6) months in the preceding school year * * *." Section 21–211, supra.

When viewed realistically, it seems to us that such change clearly reflects the motivating force behind the 1955 amendment and constituted the dominate purpose of the amendment. Also we again remind that the amendment dealt only with special circumstances and not with the preceding paragraph of the statute relating to the general powers of the board.

■ In summation, then, we are constrained to conclude that there is no express provision in the statutes authorizing the boundary board to depart from the rule requiring a school district to be composed of reasonably compact and contiguous territory, and in addition we are unable to find anything in the school laws of this state or the constitution indicating an intention that this should be done. For such reasons we hold that the boundary board in this proceeding was guilty of a gross usurpation of powers and its actions cannot stand.

In view of the foregoing it is unnecessary to consider the second basic question tendered by the appellants. In this connection, however, we might say that the legal principles controlling such matters have been rather well established by our previous decisions.

The order of the district court is reversed with instructions to enter judgment for appellants, declaring the boundary board proceedings to be null and void.

Reversed with instructions.

PARKER, C. J., concurs in the result.