Dean D. NYLEN, Appellant (Plaintiff),

v.

Sharon DAYTON, individually; Dayton Ranches, a partnership, and its partners, Sharon Dayton and Lynn T. Dayton, individually and as partners of Dayton Ranches, Appellees (Defendants).

No. 88–280.

Supreme Court of Wyoming.

March 30, 1989.

Roger Cowan of Harris and Morton, P.C., Evanston, for appellant.

S.B. Freeman, III of Bormuth, Freeman & Fuller, Cody, for appellees.

George E. Powers, Jr. of Godfrey, Sundahl & Jorgenson, Cheyenne, for amici curiae Wyoming Stock Growers Ass'n, Wyoming Wool Growers Ass'n, and Wyoming Farm Bureau Federation.

Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and LEIMBACK, District Judge.

MACY, Justice.

Appellant Dean D. Nylen brought an action to recover for property damage and related expenses resulting from the collision of his tractor-trailer with a horse owned or controlled by appellees Sharon Dayton, individually, Dayton Ranches, a partnership, and its partners, Sharon Dayton and Lynn T. Dayton, individually and as partners of Dayton Ranches. The district court granted summary judgment to appellees.

We affirm.

Appellant states the issues in this manner:

> WHETHER A VIOLATION OF WYO. STAT. § 11–24–108 (1977 AS AMENDED) CREATES A STANDARD OF:
>
> > (a) NEGLIGENCE ON THE PART OF THE LIVESTOCK OWNER/KEEPER; OR
> >
> > (b) A REBUTTABLE PRESUMPTION OF NEGLIGENCE ON THE PART OF THE LIVESTOCK OWNER/KEEPER; OR
> >
> > (c) NEGLIGENCE PER SE ON THE PART OF THE LIVESTOCK OWNER/KEEPER.

Appellees, alternatively, articulate as a single combined issue:

> A. WHETHER THE MERE PRESENCE OF A HORSE UPON THE HIGHWAY WITHOUT ANY SHOWING THAT THE APPELLEES EITHER NEGLIGENTLY OR CONSCIOUSLY PERMITTED THE HORSE TO RUN AT LARGE CONSTITUTES A VIOLATION OF § 11–24–108, WYOMING STATUTES, 1977 (1987 Cum.Supp.), AND, IF SO, WHETHER SUCH VIOLATION CONSTITUTES A PRESUMPTION OF NEGLIGENCE SUFFICIENT TO MAKE A CASE FOR THE JURY.

Pursuant to W.R.A.P. 4.08, the parties have submitted an agreed upon statement of the facts, approved by the district court, to be used as the basis for reviewing the

legal determinations made by the district court. The statement of facts is consistent with the materials included in the record on appeal.

Appellant is an independent long-haul truck driver. Sharon Dayton is a rancher who, in partnership with her brother, Lynn Dayton, owned a ranch near Cokeville, Wyoming.[1] On June 9, 1987, appellant was driving his truck and trailer on U.S. Highway 30 north of Cokeville. At approximately 10:30 that evening, a horse owned by Sharon Dayton wandered onto the roadway in front of appellant's truck. The truck collided with the horse, killing the horse and extensively damaging the truck. Prior to the accident the horse had been kept in pastures owned by Dayton Ranches, whose lands were adjacent to U.S. Highway 30 near the location of the collision. In this area U.S. Highway 30 is a fenced public highway. A ranch employee stated in an affidavit that the gate enclosing the pasture containing the horse was closed when he left the ranch at the end of the work day on June 9, 1987. An outer gate accessing the highway from the ranch lands may have been open. It is unknown how the horse escaped from the enclosed pasture.

By complaint and amended complaint, appellant alleged causes of action against appellees premised on negligence, negligence per se, and strict liability. After a period of discovery, both sides submitted motions for summary judgment supported by affidavit and deposition testimony. Appellant, in his motion for summary judgment, posited, as an alternative to his theory of negligence per se, the theory that a violation of the applicable statute created a rebuttable presumption of negligence. After a hearing, the district court denied appellant's motion for summary judgment and granted the motion of appellees. The district court found that appellant had presented no evidence of appellees' negligence and that the law in Wyoming does not subject livestock owners to strict liability, negligence per se, or presumptions of negligence under the facts of

this case. This appeal followed in which appellant contests only the district court's findings as to negligence per se or a rebuttable presumption of negligence.

Summary judgment is properly granted only where there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law. *Doud v. First Interstate Bank of Gillette,* 769 P.2d 927 (Wyo.1989); *St. Paul Fire and Marine Insurance Co. v. Albany County School District No. 1,* 763 P.2d 1255 (Wyo.1988); *Teton Plumbing and Heating, Inc. v. Board of Trustees, Laramie County School District Number One,* 763 P.2d 843 (Wyo.1988). Where, as here, the facts are not in dispute and we are presented strictly with questions of law, we accord no deference to and are not bound by the lower court's decision. *Mills v. Garlow,* 768 P.2d 554 (Wyo.1989); *Robinson v. Bell,* 767 P.2d 177 (Wyo.1989).

Appellant essentially contends that the mere presence of livestock on a fenced public highway constitutes a violation of Wyo.Stat. § 11–24–108(a) (1977) and that, by its amendment to the statute in 1975, the legislature intended to create a standard of negligence per se or a rebuttable presumption of negligence for such a statutory violation. Section 11–24–108 provides in pertinent part:

(a) No owner or person having custody or charge of livestock shall permit the livestock to run at large in any fenced public highways in Wyoming as defined in W.S. 31–4–101 [§ 31–1–101]. Livestock shall not be picketed on a public highway right-of-way from one (1) hour before sundown to one (1) hour after sunrise. If livestock are picketed on a public highway and escape, the owner or person having custody or charge of the livestock is deemed to have permitted the livestock to run at large in violation of this section. No livestock shall be picketed on an interstate or national defense

---

1. Subsequent to the accident involved in this case, the ranching operation was incorporated, and the partnership was dissolved.

highway as defined in W.S. 31–5–1001(a)(xiv).

(b) Any person or corporation violating this section shall be fined not less than fifty dollars ($50.00) nor more than seven hundred fifty dollars ($750.00) and in addition shall pay all damage done by the livestock. The provisions of this section do not apply to livestock drifting into lanes or fenced roads in going to or returning from their accustomed ranges.

Prior to its amendment in 1975,[2] the predecessor to the above statute provided in material part:

It shall be unlawful for any person, persons, company or corporation being the owner of livestock of any kind or having custody or charge thereof to permit said livestock to run at large in any fenced public lanes or fenced roads in the State of Wyoming. Any person, persons, company or corporation violating the provisions of this section shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not less than ten dollars ($10.00) nor more than one hundred dollars ($100.00) and in addition shall pay all damage done by such stock unlawfully permitted to run at large in such lanes or roads; provided that the provisions of this act [section] shall not apply to range cattle drifting into lanes or fenced roads in going to, or returning from their accustomed ranges.

Wyo.Stat. § 11–507 (1957).

Appellant asserts that the deletion of the term "unlawful" in the amended version of the statute indicates the legislature intended to impose criminal and civil liability upon the owner or keeper for livestock running at large in a fenced public highway without any showing of negligence or knowledge on behalf of the owner or keeper. Alternatively, appellees persuasively contend that the cases decided by this Court both before and after the amendment to the statute establish that the operative word in the statute is "permit" and

that the statute is not violated absent a showing of negligence.

The facts in *Hinkle v. Siltamaki,* 361 P.2d 37 (Wyo.1961), involving a nighttime collision of an automobile with horses on a fenced highway, are strikingly similar to those in the instant case. The appellant in *Hinkle* similarly argued that the presence of livestock on a fenced highway created a prima facie case of negligence shifting the burden to the owners to show that they had used reasonable care in keeping the animals off the highway. In affirming summary judgment for the appellees, we observed:

Various cases discussing the owner's liability for animals at large on the highway are mentioned in Annotations at 34 A.L.R.2d 1285 and 59 A.L.R.2d 1328. Although a few jurisdictions hold that proof of an animal's running at large raises a presumption of negligence on the part of the owner, or that the doctrine of res ipsa loquitur applies, the majority rule is:

"Where the particular statute involved provides that the owner shall not *'permit,'* 'allow,' or 'suffer' his animals to run at large, the courts have generally held, or recognized, that statutes of this type are not violated in the absence of at least negligence by the owner of the animals." 34 A.L.R.2d 1285, 1289.

*Id.* at 40 (emphasis added). We further stated in that case:

According to the weight of authority, courts have had no hesitancy in holding that a statute making it unlawful for an owner of livestock *"to permit"* them to run at large implies knowledge, consent, and wilfulness on the part of the owner, or such negligent conduct as is equivalent thereto, so that the proof of one of these elements is essential either to a conviction or an assessment of damages growing out of a violation.

*Id.* at 41 (emphasis added). In *Gilliland v. Steinhoefel,* 521 P.2d 1350 (Wyo.1974), we

---

**2.** Section 11–24–108 was also amended in 1978 and 1981 in ways not material to the issues in

this case.

reaffirmed our holding in *Hinkle* and clarified that, for purposes of civil liability, § 11–507 could be violated by simple negligence without proof of knowledge, consent, or willfulness.

As discussed, § 11–507 was amended in 1975, eliminating the term "unlawful." *Endresen v. Allen,* 574 P.2d 1219 (Wyo. 1978), was decided after the amendment. In that case, a motorcyclist was injured when a dog, in violation of a municipal leash law ordinance, ran in front of him on a city street. Although we held that the city ordinance eliminated any requirement of *scienter,* i.e., knowledge of the propensities of the dog, we declined to apply a standard of negligence per se and reiterated our holdings in *Hinkle* and *Gilliland* that, with respect to animal-at-large statutes, a showing of the defendant's negligence in permitting the animal to run at large is required in order to take the case to a jury. *Endresen,* 574 P.2d at 1222–25.

■ Despite the apparently dispositive effect of the above decisions, particularly *Endresen* as being decided after the amendment of the statute, appellant urges that the deletion of the term "unlawful" from the statute must have been purposeful and that it was intended to change the meaning of the statute to create a standard of negligence per se or a rebuttable presumption of negligence. Inherent in this argument, as we see it, is the proposition that *Endresen* was wrongly decided. We cannot agree.

■ Generally, when the legislature amends a statute by deleting an express provision, the presumption is that a change was intended. *Wetering v. Eisele,* 682 P.2d 1055 (Wyo.1984); *Forest Oil Corporation v. District Boundary Board of Sweetwater County,* 419 P.2d 194 (Wyo.1966). It may be just as reasonable, however, to say that a term was removed because it served no useful purpose. "Changes in phraseology do not always change the

meaning given to a statute prior to amendment. The change may result from a variety of reasons." *Id.* at 197. *See also Vincent v. Reeves,* 47 Wyo. 117, 31 P.2d 680 (1934). In *State v. Stern,* 526 P.2d 344, 351 (1974), we quoted with approval *Hughes v. United States,* 338 F.2d 651 (1st Cir.1964), for the proposition that "unlawfully" is a conclusion of law meaning contrary to law and nothing more. We agree with appellees that, considering the general prohibition stated in the act and the penalty provision, it is just as reasonable to assume the term "unlawful" was deleted because it was redundant and unnecessary language.

As we read the amendatory language of the statute, it appears to be directed specifically to the problem of livestock picketed on fenced public highways without otherwise significantly changing the general prohibition regarding livestock at large on a fenced public highway. This interpretation, as noted by appellees, is consistent with the stated purpose of the amendment found in the 1975 Session Laws of Wyoming, which describe the amendment as:

> AN ACT to amend W.S. 11–507 relating to livestock running at large in fenced public ways; providing that if picketed livestock escape, the owner or person in charge thereof is deemed to have permitted their escape; and providing penalties.

1975 Wyo.Sess.Laws ch. 68, § 1. *See also* Digest of House Journal of the Forty–Third State Legislature of Wyoming at 127 (1975).[3]

■ We are not persuaded, therefore, that the amendment to the statute affected the negligence standard for a violation of the statute established in *Hinkle* and reaffirmed in *Gilliland* and *Endresen,* except possibly in the case of livestock picketed on the highway. Thus in the instant case, where appellant has admittedly failed to present any evidence of appellees' negligence,[4] the mere presence of the horse on

---

3. We note that this is not a case involving livestock picketed on a public highway which have escaped. The "deemed to have permitted" language regarding such livestock was undoubtedly intended to affect the standard to be applied when picketed livestock escape.

4. Appellant, as mentioned, has not raised as an issue on appeal the propriety of summary judg-

the highway fails to establish a violation of the statute and, in the absence of a statutory violation, there can be no question of negligence per se or a rebuttable presumption of negligence. Summary judgment for appellees was proper as a matter of law.

Affirmed.

URBIGKIT, J., files a dissenting opinion.

URBIGKIT, Justice, dissenting.

I dissent. In factual progression, this case tells us (1) appellee (defendant) owned a horse; (2) the horse was placed in a pasture under the control of appellee and came to run at large on a fenced public highway; (3) the horse was under the control of appellee; (4) the vehicle being driven by appellant (plaintiff) hit the horse on the public highway where the law says no owner or person having custody will permit livestock to be; (5) the driver of the damaged vehicle did not permit or encourage the animal to be on the fenced highway; (6) the owner of the horse provided no evidence how his horse got where the law denies it permission to be, although surely it did not fly nor swim, and must have been let out by unclosed gates or jumped over insufficient fences; (7) in the context of the English language, the horse itself did not permit itself to be upon the fenced highway; (8) in the absence of proof to the contrary in some defensive fashion, the permitting authority was the owner; and (9) absent proof to the contrary, there is evidence from the accident that followed that the owner permitted the horse to be where it was by failure of an adequate denial of access to be upon the highway.

I would apply the statute in context presently written since the word unlawfully has been deleted in last amendment and find a case to be presented sufficient to escape summary judgment as now presented by the unexplained presence of the animal on the highway. "No owner or person having custody or charge of livestock shall permit the livestock to run at large in any fenced public highways in Wyoming * * *." W.S. 11–24–108(a). Somebody permitted the horse to be on the highway and, in this record, there is no other suspect except the owner. I do not find a basis justified in precedent for providing the owner of the offending horse absolving summary judgment as a matter of law. *Cordova v. Gosar*, 719 P.2d 625 (Wyo.1986).

The purpose of fenced highways is well-defined as designed to keep livestock out of roadways and, consequently, to avoid collision injury or damage to the traveling public. No wonder highway accidents and injuries continue to increase if efforts to achieve safety are ascribed such results as will be provided by this case. Furthermore, if the legislature wants to trigger liability by "negligently permitting" or "intentionally permitting" as first requirements following creation of the dangerous condition, the statutory language should expressly provide that disinclination for responsibility. In statutory text, I would not follow *Hinkle v. Siltamaki*, 361 P.2d 37 (Wyo.1961) to a summary judgment absolution of potential liability from a condition which the legislature obviously sought to prevent. Cf. *Endresen v. Allen*, 574 P.2d 1219 (Wyo.1978) and *Gilliland v. Steinhoefel*, 521 P.2d 1350 (Wyo.1974).

This is a summary judgment case where the livestock owner gave no justified explanation for the presence of his horse on the fenced highway where it should not have been. Obviously, such a defense may exist as not now required for this litigation as concluded by this summary judgment. Further, I follow the principle that violation of a statute is prima facie evidence of negligence so that the presence of the animal on the fenced highway may be sufficient to escape motion disposition but not necessarily to establish finite liability following motor vehicle collision. See *Short v. Spring Creek Ranch, Inc.*, 731 P.2d 1195

ment in relation to his negligence claim. In the agreed upon statement of facts, appellant effectively conceded a failure of evidence on that claim. We need not consider, therefore, whether or not a factual issue of negligence was presented by the equivocal evidence that the outer gate accessing the highway may have been open.

(Wyo.1987) (Urbigkit, J., concurring). Cf. *Endresen,* 574 P.2d 1219.

Livestock within a fenced highway constitute a singular danger to the public who travel upon the state highways and I would find that subject adequately addressed by the statute to establish a sphere of responsibility for the owner in order that a collision caused by unexplained presence will proceed to a factual resolution by trial. *Stratman v. Admiral Beverage Corp.,* 760 P.2d 974 (Wyo.1988); *Osborn v. Manning,* 685 P.2d 1121, 1123 (Wyo.1984). It should not be ignored that *Hinkle,* 361 P.2d 37 is distinguishable from both *Endresen,* 574 P.2d 1219 and *Gilliland,* 521 P.2d 1350, by contrary result with reversal of the summary judgment initially granted to the livestock owner. Like the result in those cases, I would require a full development of the facts here also by trial presentation. Who better than the owner should know what did happen and surely the statute loses substance if subject to a "Gee, I just don't know" amorphous summary judgment disposition.

The disarmingly simple solution of the majority is a continued invitation for damage and injury to the traveling public for whom the fenced highways were constructed and the prohibitory statute enacted. Consequently, I dissent from affirmation of this summary judgment.