Charles E. **FOWLER, Jr.,**
**Appellant (Plaintiff),**

v.

**WESTAIR ENTERPRISES, INC. d/b/a Cloud Peak Realty, Appellee (Defendant).**

No. 95–103.

Supreme Court of Wyoming.

Dec. 7, 1995.

Robert W. Brown of Lonabaugh and Riggs, Sheridan, for appellant.

John G. Fenn and Lawrence A. Yonkee of Yonkee & Toner, Sheridan, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellant Charles Fowler, Jr. appeals from the summary judgment which was granted in favor of Appellee Westair Enterprises, Inc., doing business as Cloud Peak Realty.

We affirm.

### ISSUE

Fowler presents a single issue on appeal:

1.  Whether the District Court properly granted Summary Judgment to Defendant Westair Enterprises, Inc., d/b/a Cloud Peak Realty.

### FACTS

In December of 1991, Fowler traveled to Sheridan in search of a home to purchase. A real estate agent who was affiliated with Westair Enterprises showed a house to Fowler. The owners of the house had signed an agreement which gave the real estate agent the exclusive right to sell their home.

The real estate agent and Fowler discussed an apparent sag in the roof of the greenhouse portion of the home and a deflection in the floor of one of the upstairs bedrooms. The real estate agent suggested that Fowler could have a qualified inspector inspect the structural aspects of the house. The real estate agent informed Fowler that such an inspection would cost approximately seventy-five dollars. Fowler requested that the owners pay for an inspection.

After Fowler made an initial offer to purchase the property, he and the owners exchanged several counter offers. The following statements were included within the owners' December 17, 1991, counter offer:

2.  A structural integrity study is in the process of being done. Results will be forwarded when they become available.

3.  Acceptance of this counter offer is subject to buyer[']s approval of structural integrity study.

The real estate agent did not actually contact an engineer until December 24, 1991, to re-

quest that an inspection be made. The real estate agent told the engineer that the inspection had to be completed on that day. The engineer completed his inspection of the home in approximately one hour and, in a letter addressed to the real estate agent, concluded that the house was structurally sound. A copy of the letter was forwarded to Fowler, and the sale of the home was completed in February 1992.

Fowler subsequently discovered a number of defects in the home. He filed a lawsuit against the owners, Westair Enterprises, and the engineer. The district court granted a summary judgment in favor of the owners and Westair Enterprises. After a jury trial was held to consider Fowler's claims against the engineer, the trial court entered a judgment in favor of Fowler. At that point, the summary judgment which the district court had granted in favor of Westair Enterprises became a final order, and Fowler appealed from that order to this Court.

## DISCUSSION

■ Summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Kahrs v. Board of Trustees for Platte County School District No. 1,* 901 P.2d 404, 406 (Wyo.1995); *see also* W.R.C.P. 56(c). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Adkins v. Lawson,* 892 P.2d 128, 130 (Wyo.1995).

Fowler argues that the summary judgment was improper because the real estate agent had acted as his agent for the limited purpose of securing an appropriate structural inspection or study of the house. Fowler insists that a genuine issue of material fact existed as to whether the real estate agent correctly communicated Fowler's concerns to the inspecting engineer about the structural soundness of the house.

■ In certain instances, a real estate agent who is generally acting on behalf of the sellers may be considered to be acting as the purchaser's agent as well. *Hagar v. Mobley,* 638 P.2d 127, 138 n. 6 (Wyo.1981). In *Hagar,* this Court held that a question of fact existed as to whether the real estate agent had acted as the purchaser's agent because he had assisted the purchaser in getting financing and agreed to "list the property being used as collateral and to eventually pay off the loan." *Id.*

■ Fowler and the real estate agent did not execute an express agency agreement. We must consider, therefore, whether an agency relationship arose by implication between Fowler and the real estate agent. Courts do not presume that an agency relationship exists. *Walter v. Moore,* 700 P.2d 1219, 1223–24 (Wyo.1985). "When the relationship of principal and agent is in issue, the party alleging agency has the burden of [proving] both the existence and nature thereof." *True v. Hi–Plains Elevator Machinery, Inc.,* 577 P.2d 991, 997 (Wyo.1978). *See also Lavoie v. Safecare Health Service, Inc.,* 840 P.2d 239, 248 (Wyo.1992).

> "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

*True,* 577 P.2d at 999 (quoting 1 RESTATEMENT (SECOND) OF AGENCY § 1 at 7 (1957)). *See also Sykes v. Lincoln County School District No. 1 & 2,* 763 P.2d 1263, 1266 (Wyo.1988). Whether an agency relationship exists is a question of fact; however, when the evidence does not create a question of fact, the courts make that determination as a matter of law. *Hamilton v. Natrona County Education Association,* 901 P.2d 381, 386 (Wyo.1995).

■ The real estate agent averred that he had told Fowler that he was representing the owners in the sale. Fowler testified in his deposition that he understood that real estate agents work for the sellers. The record reveals that the real estate agent told Fowler that Fowler could have an inspector examine the structural aspects of the home. Fowler told the real estate agent that he wanted the owners to pay for the inspection. Taking this evidence into account, we conclude that

Fowler did not meet his burden of proving that an agency relationship had developed between him and the real estate agent. The real estate agent was, therefore, acting on behalf of the owners when he contacted the engineer.

Fowler argues that the summary judgment was also improper because a genuine issue of material fact existed as to whether Westair Enterprises breached the duty which it owed to him as a nonclient buyer. He claims that the real estate agent made a material misrepresentation to him in the owners' December 17, 1991, counter offer by stating that a structural integrity study was in the process of being done when, in fact, the real estate agent did not contact the engineer until December 24, 1991. Fowler also suggests that he believed the engineer had performed a more extensive study than a normal structural inspection because the counter offer referred to it as being a "structural integrity study."

In *Hagar*, we stated: "[R]ealtors owe the vendee the same duties of integrity owed the public at large. They must be honest, trustworthy and competent." 638 P.2d at 136. *See also Kelly v. Roussalis*, 776 P.2d 1016, 1018 (Wyo.1989). We stated the duty of care in *Rauh v. Kornkven*, 852 P.2d 328 (Wyo.1993), which is owed by real estate brokers and sales persons to nonclient buyers. The duties of a real estate agent include: "(1) to not perpetuate a material misrepresentation of the seller which the broker/salesperson knows or should know is false, and (2) to take reasonable steps to avoid giving the buyer false information." 852 P.2d at 330.

Westair Enterprise's real estate agent did not breach his duty to Fowler.

Even though the statement in the December 17, 1991, counter offer that a structural integrity study was in the process of being done was incorrect, the misstatement was not material because the date on which the study was conducted was not of any consequence.

Fowler insinuates in his brief that, by containing the term "structural integrity study," the December 17, 1991, counter offer represented that something more extensive than a normal structural inspection was being performed on the house. Fowler's deposition belies his argument. He testified that he considered the terms "structural integrity study" and "structural inspection" to be synonymous. Fowler was aware that the inspection would cost approximately seventy-five dollars, and he received a copy of the engineer's report, which was quite brief. Because of the low cost of the inspection and the brevity of the report, Fowler could not have reasonably believed that the inspection involved an extensive analysis of the structural integrity of the house. Consequently, neither the date of the inspection nor the terminology used to identify the engineer's examination was of any matter.

## CONCLUSION

We hold that no genuine issue as to any material fact existed in this case and that Westair Enterprises was entitled to have a judgment as a matter of law.

Affirmed.