Barbara Schwartz ROITZ and Rex Schwartz, individually, and in their capacity as Personal Representatives and on behalf of the Estate of Kristopher Allen Schwartz, Appellants (Plaintiffs),

v.

Robert William KIDMAN, individually; George Robert Eyre, individually; Brad Eyre, individually; Kirk Eyre, individually; Mark Powers, individually; Brad Vercimak, individually; and John Does I–X, Doe Partnerships I–X, and Doe Corporations I–X, Appellees (Defendants).

No. 95–186.

Supreme Court of Wyoming.

March 15, 1996.

Dennis W. Lancaster of Phillips & Lancaster, P.C., Evanston, for Appellants.

Robert J. Reese of Reese & Mathey, Green River, for Appellee Robert Kidman.

Rebecca A. Lewis of Lewis & Associates, P.C., Laramie, for Appellees George Eyre, Brad Eyre, Kirk Eyre, and Mark Powers.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

MACY, Justice.

Appellants Barbara Roitz and Rex Schwartz, the parents of Kristopher Schwartz, (the parents) appeal from the district court's orders which granted a partial summary judgment in favor of Appellee Robert Kidman (Kidman) on the parents' negligent-infliction-of-emotional-distress claim and a summary judgment in favor of Appellees George Eyre, Brad Eyre, Kirk Eyre and Mark Powers (the ranchers) on the parents' negligent-infliction-of-emotional-distress and wrongful-death claims.

We affirm in part, reverse in part, and remand.

## ISSUES

The parents present the following issues for our review:

1) Whether the district court's order granting Appellees' George Eyre, Brad Eyre, Kirk Eyre and Mark Powers[ ] motion for summary judgment against [the parents] on [their] claims for negligence and emotional distress[ ] and the district court's related findings are supported by the facts, the record and the law.

2) Whether the district court's order granting Appellee Robert William Kidman's motion for partial summary judgment against [the parents] on [their] claims for infliction of emotional distress[ ] and the district court's related findings are supported by the facts, the record and the law.

## FACTS

At approximately nine o'clock in the evening of September 24, 1993, Kidman was driving a car east on Uinta County Road 254 near Lyman at a rate of speed which significantly exceeded the 35-mile-per-hour speed limit. Kristopher Schwartz was a passenger in the car. Kidman saw two head of cattle in his lane of traffic, and, in an attempt to avoid hitting those cattle, he swerved and collided with some other cattle. Three cows and one calf were killed as a result of the accident. George Eyre owned the calf and two of the cows; Powers owned the third cow.

Kristopher was thrown out of the car when it collided with the cattle. An ambulance, which was summoned to the accident scene, transported Kristopher to the Evanston hospital. Shortly thereafter, the parents arrived at the Evanston hospital. Kristopher was later transferred to a hospital in Salt Lake City, Utah, where he died as a result of the injuries he sustained in the accident.

On July 29, 1994, the parents filed a complaint in the district court, seeking relief from Kidman and the ranchers. The parents, as the personal representatives of Kristopher's estate, presented a wrongful-death claim and, as individuals, presented claims for negligent infliction of emotional distress. The ranchers requested that a summary judgment be entered in their favor on the parents' claims against them. Kidman admitted liability to the parents on the wrongful-death claim, but he filed a motion, asking that a partial summary judgment be entered in his favor on the parents' claims for negligent infliction of emotional distress. The district court held a hearing and granted the motions. After the district court certified that its summary judgments were final, appealable orders, the parents appealed to this Court.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when no genuine issue as to any material fact exists and when the prevailing party is entitled to have a judgment as a matter of law. *Fowler v. Westair Enterprises, Inc.*, 906 P.2d 1053, 1055 (Wyo.1995); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of a cause of action or defense which has been asserted by the parties. *Adkins v. Lawson*, 892 P.2d 128, 130 (Wyo.1995). We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Fowler*, 906 P.2d at 1055. We do not favor the granting of a summary judgment in a negligence action; therefore, the summary

judgment is subject to more exacting scrutiny. *Duncan v. Town of Jackson,* 903 P.2d 548, 551 (Wyo.1995).

## B. Negligent–Infliction–of–Emotional–Distress Claims

■ Each parent presented a claim against the appellees for negligent infliction of emotional distress. The district court granted summary judgments in favor of the appellees, finding that, since the parents did not observe their son being injured and they were not at the accident scene, the immediacy requirement of the negligent-infliction-of-emotional-distress tort had not been satisfied.

■ A plaintiff can recover for negligent infliction of emotional distress only " 'if he observed the infliction of serious bodily harm or death, or if he observed the serious bodily harm or death shortly after its occurrence but without material change in the condition and location of the victim.' " *R.D. v. W.H.,* 875 P.2d 26, 34 (Wyo.1994) (quoting *Gates v. Richardson,* 719 P.2d 193, 199 (Wyo.1986)). In *Contreras By and Through Contreras v. Carbon County School District # 1,* 843 P.2d 589, 593 (Wyo.1992), we stated:

> Our immediacy test allows some time to elapse between the time of injury and the time of observation. Once the victim's condition or location has materially changed, however, the moment of crisis for which recovery is allowed is deemed to have passed, regardless of the brevity of time which has elapsed since the accident. Shock or emotional distress may occur after this point, but it is no longer compensable.

In that case, we stated that a plaintiff may not recover on a negligent-infliction-of-emotional-distress claim if he does not see the victim until after the victim has been transported to a hospital. 843 P.2d at 594.

The parents in this case rely upon our decision in *R.D.* as being support for their argument that the immediacy requirement was satisfied. In *R.D.,* we considered a special situation wherein the negligent act was separated in time from the injury. 875 P.2d at 34. In that case, we held that the plaintiffs stated a claim for negligent infliction of emotional distress when they asserted in their complaint that they had viewed the immediate aftermath of the decedent's suicide even though they had not witnessed the negligent acts which resulted in the suicide. 875 P.2d at 34–35.

The special circumstances in the *R.D.* case were not present in this case. Unlike the plaintiffs in *R.D.,* the parents here did not see the victim immediately after he was injured. Kristopher had been transported to the hospital before his parents saw him. While the parents were understandably shocked when they saw their son in an injured condition, their emotional distress was not compensable under the facts of this case. *See Contreras By and Through Contreras,* 843 P.2d at 593–94.

## C. Wrongful–Death Claim

■ The parents asserted a claim for wrongful death against the ranchers, contending that the ranchers were negligent in failing to keep their cattle off the road and that their negligence was a proximate cause of Kristopher's death. The ranchers moved for a summary judgment, and the district court granted their motion, finding that they were not negligent and were not liable to the parents under the provisions of WYO.STAT. § 11–24–108 (1981). The district court also found that the undisputed facts placed the case within the "drifting livestock" exception delineated in § 11–24–108(b). Section 11–24–108 provides in pertinent part as follows:

> (a) No owner or person having custody or charge of livestock shall permit the livestock to run at large in any fenced public highways in Wyoming....

> (b) Any person or corporation violating this section shall be fined not less than fifty dollars ($50.00) nor more than seven hundred fifty dollars ($750.00) and in addition shall pay all damage done by the livestock. The provisions of this section do not apply to livestock drifting into lanes or fenced roads in going to or returning from their accustomed ranges.

The parents contest the district court's conclusions and maintain that genuine issues of material fact existed as to whether the

cattle were running at large or whether they were drifting. They also contend that genuine issues of material fact existed as to whether the ranchers were negligent in how they cared for their cattle.

The Legislature passed the original version of § 11–24–108 in 1919, and, on a number of occasions, this Court has considered cases which have required that this statute be applied. *See Nylen v. Dayton*, 770 P.2d 1112 (Wyo.1989); *Gilliland v. Steinhoefel*, 521 P.2d 1350 (Wyo.1974); *Ellsworth Brothers, Inc. v. Crook*, 406 P.2d 520 (Wyo.1965); *Chicago and North Western Railway Company v. Bishop*, 390 P.2d 731 (Wyo.1964); *Hinkle v. Siltamaki*, 361 P.2d 37 (Wyo.1961). The *Nylen* decision reviewed the prior cases in which we interpreted this statute. 770 P.2d at 1115–16. The Court concluded that, by using the term "permit" in the statute, the Legislature required a plaintiff to show that a defendant was negligent in permitting his livestock to run at large on the public highway. 770 P.2d at 1115–17. A defendant is entitled to have a summary judgment granted in his favor when the plaintiff has failed to make a prima facie showing that the defendant was negligent. *Id.*

When we consider the record in the light most favorable to the parents, we discover the following facts which pertain to the wrongful-death claim. County Road 254, an east-west road, is a paved road west of its intersection with County Road 253, a north-south road, and is a dirt road east of the intersection. Fences run along both sides of the road. County Road 254 has a cattle guard across it just east of its intersection with County Road 253, and a gate (the lower gate) is located next to the cattle guard. Another cattle guard is located approximately 1.8 miles east of the lower gate and cattle guard. A gate (the upper gate) is located next to the second cattle guard and connects the ranchers' summer grazing pastures with the enclosed portion of the dirt road. In order for cattle to access the paved portion of the road from the summer range, they have to travel through the two gates.

Each rancher was either an owner or a custodian of the cattle. The car collided with the cattle on the paved portion of County Road 254.

The upper gate was apparently open on the night that the accident occurred, allowing the cattle to travel from the summer range into the fenced portion of the dirt road between the two cattle guards. A dispute existed in the record as to whether or not the ranchers allowed the upper gate to remain open. Powers testified in his deposition that he did not care if the upper gate remained open because he wanted the cattle to gather in the fenced area of the dirt roadway between the upper and lower cattle guards. Similarly, Kirk Eyre testified that he did not

worry about whether the upper gate was closed. In contrast, George Eyre and Brad Eyre testified that it was their practice to keep the upper gate closed.

The ranchers testified that they routinely checked the fenced dirt roadway between the upper and lower cattle guards and generally removed the cattle which had gathered in that area. The ranchers also testified, however, that on occasion they would leave cattle in the fenced roadway overnight. Powers and Kirk Eyre testified that the area was checked in the afternoon and early evening before the accident occurred and that no cattle were gathered in there.

The lower gate was open on the night that the accident occurred, and the cattle, therefore, had access to the paved portion of the road. The ranchers testified that they generally kept the lower gate closed and that they checked it regularly during the fall of the year to make sure it remained closed. Powers and Kirk Eyre testified that they checked the lower gate in the afternoon and early evening on the day of the accident and that it was closed. George Eyre testified that, although he usually checked the lower gate each night to be sure it was closed, he did not check the gate on the night of the accident.

Taking these facts into account, we conclude that genuine issues of material fact existed as to whether the ranchers were negligent. A jury should determine what type of precautions the ranchers, as reasonable persons under all the circumstances, should have taken to keep their cattle off the roadway. *See Hill v. Park County By and Through Board of County Commissioners,* 856 P.2d 456, 459 (Wyo.1993). For example, should the ranchers have kept the gates closed, and, if so, what actions should they have taken to ensure that the gates remained closed? A jury must also determine from the conflicting evidence what precautions were actually taken by the ranchers to ensure that their cattle were not running at large on the roadway. Genuine issues of material fact also existed as to whether the cattle were drifting from their summer pastures since the record suggested that the ranchers may have been using the fenced roadway between the upper and lower gates as a catchpen or a corral for their cattle.

## CONCLUSION

We agree with the district court that no genuine issue of material fact existed on the parents' claims for negligent infliction of emotional distress and, therefore, affirm the summary judgments which were granted in favor of the appellees on those claims. We hold, however, that genuine issues of material fact did exist with regard to the parents' wrongful-death claim and, therefore, reverse that portion of the district court's order which granted a summary judgment in favor of the ranchers on that claim.

Affirmed in part, reversed in part, and remanded to the district court for further proceedings.